UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re *Ex Parte* Application of Kevin Hellard and Jonathan Thielmann, Joint Trustees in Bankruptcy of Anatoly Leonidovich Motylev, pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding,<br><br>                    Petitioner. | Misc. Case No. M- 21-mc-864 |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201

**TABLE OF CONTENTS**

**Page**

BACKGROUND ..................................................................................................................1

ARGUMENT ......................................................................................................................5

    I.    PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782..................................................................................................6

    II.    THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER.......7

    III.    THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*..................................................................................................................9

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
  785 F. Supp. 2d 434 (S.D.N.Y. 2011)...................................................................................9

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)..................................8

*In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant
  to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
  No. 13 Misc. 397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)................................10

*In re Application of Hill*,
  M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005)..........................................................7

*In re Application of Hornbeam Corp.*,
  No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ...........................................9

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012)................................................................................................6, 8

*In re Chevron Corp.*,
  No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010), ECF No. 2.............................................10

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order
  Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in
  Foreign Proceedings*, 15-mc-417 (LAK), 2016 WL 702327, at *5 (S.D.N.Y.
  Feb. 18, 2016) ........................................................................................................................9

*Intel Corp.*, 542 U.S. at 264-65..........................................................................................................8

*Lancaster Factoring Co. Ltd. v. Mangone*,
  90 F.3d 38 (2d Cir. 1996) ..................................................................................................6, 7

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
  376 F.3d 79 (2d Cir. 2004)....................................................................................................7

**Statutes**

28 U.S.C. § 1782........................................................................................................... *passim*

Petitioners Kevin Hellard and Jonathan Thielmann, as Joint Trustees in the English bankruptcy proceedings of Anatoly Leonidovich Motylev ("Joint Trustees" or "Petitioners"), respectfully submit this memorandum of law in support of their application for an order, and the accompanying Declaration of Kevin Hellard dated December 23, 2021 ("Decl."), pursuant to 28 U.S.C. § 1782, to conduct discovery for use in aid of a foreign proceeding by serving a subpoena on each of Citibank, Bank of America, J.P. Morgan Chase Bank, Bank of New York Mellon, HSBC Bank, Deutsche Bank Trust Company Americas, Standard Chartered Bank, and Commerzbank AG (together, the "US Banks").

## BACKGROUND

Anatoly Leonidovich Motylev is a disgraced former Russian financier and bank owner who, in 2015, fled Russia to England after the collapse of several banks and pension funds he controlled. (*See* Declaration of Kevin Hellard in support of Petitioners' *Ex Parte* Application for an Order to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("Hellard Decl.") ¶¶ 5-7.) In Russia, Mr. Motylev was charged in absentia with fraud, embezzlement, money laundering and falsification of accounts of a financial institution. (*Id.* ¶ 8.) On February 19, 2018, Mr. Motylev was declared bankrupt in Russia. (*Id.* ¶ 9.) In September 2020, the financial manager of the Russian bankruptcy (akin to a trustee) commenced proceedings in the England High Court against Mr. Motylev, seeking recognition of the Russian bankruptcy order. (*Id.* ¶ 10.) On November 2, 2020, the Joint Trustees were appointed by an order of the English High Court, initiating the English Bankruptcy Proceedings. (*Id.* ¶ 12 & Ex. 2.) The Joint Trustees make this application as part of those proceedings.

Mr. Motylev began his financial services career in 1990 at Gosstrakh, the Soviet state insurance company, which later became Rosgosstrakh. (*Id.* ¶ 16.) In 1992, Mr. Motylev established Globex Bank, one of the earliest Russian joint stock company banks. Mr. Motylev

was Globex's chairman, and thereafter its president. (*Id.* ¶ 17.) In 1996, Mr. Motylev was arrested and detained by the Russian authorities on suspicion of unlawful debiting RUB 2 billion from Rosgosstrakh's account at Globex. (*Id.* ¶ 18.) No charges were filed, and he was released after approximately one month. Commentators have claimed Mr. Motylev avoided being charged with the help of the then Russian Minister of Internal Affairs who was also a shareholder in Globex at the time. (*Id.*)

Globex collapsed in September 2008, purportedly due to the global financial crisis. However various Russian media organizations reported that Mr. Motylev caused the bank's demise when he orchestrated a scheme whereby sham entities incorporated for one day were used to take out loans from the bank for purported real estate investments. These companies were then dissolved, and the funds never repaid to the bank. (*Id.* ¶ 19 & Ex. 3.)

Mr. Motylev emerged from Globex's demise unscathed. He continued to be active in the Russian financial sector, securing a controlling interest in the following banks: Russian Credit Bank ("RCB"); AMB Bank; M-Bank; Tulsky Promyshlennik Bank; and Kompaniya Roznichnogo Kreditovaniya Bank (together, the "Motylev Banking Group"). Mr. Motylev's business interests in Russia also included 7 pension funds. (*Id*. ¶ 20.) Between July 2014 and August 2015, the Motylev Banking Group and the pension funds referenced above all collapsed, and the licenses of these organizations were revoked. (*Id*. ¶ 21.)

Investigations conducted in connection with the collapse of one of the most high-profile bank in the Motylev Banking Group – RCB – revealed the *modus operandi* Mr. Motylev used to perpetrate his fraud, misappropriating billions of Rubles from these entities. After RCB collapsed and was placed into insolvency proceedings, the bank's bankruptcy trustee discovered a RUB 111.2 billion shortfall between the value of the bank's assets and the creditors' claims,

and that Mr. Motylev was responsible for a large portion of that shortfall due to his actions while he controlled RCB. (*Id.* ¶ 22 & Ex. 4.) The bank's bankruptcy trustee's investigation concluded that Mr. Motylev gained control over RCB by holding several key positions, which prevented any meaningful oversight, and afforded him "unlimited authority to make all types of transactions on behalf of the Bank, including the signing of contracts and settlement documents without any restrictions on the amounts." (*Id.* ¶ 23 & Ex. 4 at 3.)  As a result, shortly before RCB's license was revoked, Mr. Motylev consummated a number of transactions on extremely unfavorable terms for the bank in order to transfer assets from the bank to entities he likely owned or controlled.  (*Id.* ¶ 23 & Ex. 4 at 2.)  He did so by issuing loans in the total amount of more than RUB 33 billion to shell organizations and executing credit agreements with those entities, bypassing all of the bank's procedures and due diligence processes.  (*Id.*)  As soon as the bank's license was revoked and Mr. Motylev was out of Russia, "all borrowers without exception . . . stopped servicing [the] loan debt and did not fulfill their obligations to repay credits." (*Id.* ¶ 23 & Ex. 4 at 4.)

   Between 2017 and 2019, various indictments were issued against Mr. Motylev in Russia concerning his and his associates' fraudulent extractions of funds from banks within the Motylev Banking Group. (*Id.* ¶ 24.)  On March 29, 2018, as part of Mr. Motylev's indictment for misappropriation, embezzlement, falsification of accounting documents, and money-laundering, an investigative report was prepared by the Russian criminal authority. (*Id.* ¶ 24 & Ex. 5.)   The criminal investigation report details how Mr. Motylev and his associates extracted funds from RCB (which comports with the RCB bankruptcy trustee's findings): (i) Mr. Motylev or his associates would seek out nominee borrowers to open accounts with RCB, into which Mr. Motylev or his associates would deposit large loans; (ii) the managers of the nominee borrowers

would transfer the loan moneys deposited to accounts held by shell corporations under the control of Mr. Motylev and his associates; (iii) the moneys so transferred would then be moved through a series of accounts with different banks all in the Motylev Banking Group, all in the name of the shell corporations under the control of Mr. Motylev and his associates; and (iv) Mr. Motylev or his associates would conceal this misappropriation through the creation of false transaction documents.  (*Id.* ¶ 25 & Ex. 5.) Based on the Joint Trustees' investigation, Mr. Motylev's fraud on RCB appears to be illustrative of his fraud on other banks and pension funds in which he was involved.  (*Id.* ¶ 27.)

Although the Joint Trustees' investigation is still ongoing, they are aware of a significant number of companies associated with Mr. Motylev, spanning several jurisdictions, through which very large sums of money have been moved.  In connection with a different proceeding, Mr. Motylev disclosed an interest in 267 companies incorporated in various jurisdictions (the "Disclosed Companies").  (*Id.* ¶¶ 29-30 & Ex. 6.)  The Disclosed Companies engaged in significant financial activity in the period when Mr. Motylev is alleged to have embezzled funds from the Motylev Banking Group and the pension funds (leading up to their collapse in 2015). (*Id.* ¶ 30.)  It appears highly likely that Mr. Motylev's corporate structure includes additional companies not listed in Mr. Motylev's List of Assets. Indeed, beyond the companies to which Mr. Motylev has admitted a connection, the Joint Trustees have identified over 100 companies which are likely either owned or somehow connected to Mr. Motylev (the "Non-Disclosed Companies").  (*Id.* ¶ 31.)

The Joint Trustees make this application in respect of a subset of 21 Non-Disclosed Companies ("Target Companies") for which the Joint Trustees have been able to identify transactions in U.S. dollars that passed through U.S. correspondent banks.  The Target

4

Companies collectively received loan fund commitments of $1,054,414,300 from Disclosed Companies, for which there is no commercial rationale. (*Id.* ¶ 34.) The loans from the Disclosed Companies to the Target Companies were all made without any identifiable security, despite the sums loaned being significant (in the tens and sometimes hundreds of millions of dollars). The loan agreements and financial instruments follow a similar pattern, in that they are generally very brief documents containing little to no explanation of the purpose of the loan or transaction. The Joint Trustees have concluded that the Target Companies are likely either Mr. Motylev's companies or companies owned or controlled by friendly parties who may be holding funds for Mr. Motylev. (*Id.*)

Foreign banks typically use U.S.-based banks to clear dollar-denominated transactions using the Clearing House Interbank Payments System ("CHIPS"). The CHIPS system is used for virtually all dollar-denominated transactions and for transactions where the dollar is used as an intermediate currency to facilitate a currency exchange. U.S.-based correspondent banks that execute these clearing transactions keep detailed records showing the source and destination for all such transactions. (*Id*. ¶ 36.)

The Joint Trustees' investigation has identified various financial institutions located in this district, namely the US Banks, through which significant fund flows denominated in U.S. Dollars were transferred from the Disclosed Companies to the Target Companies. (*Id.* ¶¶ 37-130.) Accordingly, the Joint Trustees have filed this application because they believe that records held by the US Banks will assist the Joint Trustees in tracing those fund flows, which is likely to lead to recoveries for the bankruptcy estate.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding. The statute, in relevant part, states:

5

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782. The goals of this statute are twofold: "to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in litigation with international aspects . . . and to encourage foreign countries to provide similar means of assistance to [United States] courts." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (internal quotations and citations omitted). "In pursuit of these twin goals, the section has, over the years, been given increasingly broad applicability." *Id.* (internal quotations and citations omitted).

When a court finds that the statutory requirements of 28 U.S.C. § 1782 are met, it may, in its discretion, grant an application for discovery. The United States Supreme Court has articulated a number of factors the district courts should consider when weighing an application under Section 1782. As set forth in greater detail below, all of these discretionary factors weigh in favor of granting Petitioner the requested discovery.

### I.  PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Petitioners' application satisfies all three statutory requirements.

**First**, each of the US Banks resides or is found in this District. (Hellard Decl. ¶¶ 42, 49, 55, 60.) Petitioner seeks records that should be held in each of the US Banks' ordinary course of business and which each of the US Banks should be able to easily produce in this District.

**Second**, the discovery sought is for use in an existing foreign proceeding – the English Bankruptcy Proceeding pending in the English High Court. (*Id.* ¶ 12 & Ex. 2.) *See Lancaster*, 90 F.3d at 42 (finding that a pending foreign bankruptcy proceeding was a "proceeding" within meaning of the statute). As part of that proceeding, the Petitioners, as the Joint Trustees, are charged with tracing and recovering assets for the benefit of the estate. (*Id.* ¶¶ 35, 131.) The information concerning fund flows between the Motylev companies that is being requested from the US Banks is directly related to that effort. (*Id.*); *see, e.g.*, *In re Application of Hill*, M19-117 (RJH), 2005 WL 1330769, at *5 (S.D.N.Y. June 3, 2005) (to demonstrate that the discovery is for use in the foreign proceeding, the petitioner must show that the "requested information [is] sufficiently related to the pending" proceeding).

**Third**, Petitioners are "interested persons" authorized to bring this application, as they are parties to the foreign proceeding; indeed they represent the debtor in the English Bankruptcy Proceedings. (Hellard Decl. ¶¶ 3, 12 & Ex. 2.); *see Lancaster*, 90 F.3d at 42.

## II. THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER

"Once the statutory requirements [of 28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (internal quotations and citation omitted). The Supreme Court has identified a number of factors that the district courts are to consider in ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the

7

application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-65; *Brandi-Dohrn*, 673 F.3d at 80-81. Here, all of these factors weigh in favor of granting Petitioner's application.

First, where, as here, discovery is sought from entities that are not participating in the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. By contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264 (internal citations omitted). The US Banks from which the Joint Trustees are seeking records concerning Mr. Motylev's and his associates' misappropriation of assets are not participating in any pending foreign proceeding related to this matter. They are third parties whose information obtained by means of this 1782 application may help the Joint Trustees to recover assets for the benefit of the estate.

The second factor identified by the Supreme Court—the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal-court assistance—requires courts to consider "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (internal citations omitted). Here, the assistance of the U.S. Courts would not offend the tribunals of England, but rather would assist the English High Court to bring its proceedings to conclusion by providing information on the location of Mr. Motylev's

8

assets to be recovered for the benefit of his creditors in the English Bankruptcy Proceedings. (Hellard Decl. ¶¶ 35, 131.) Following from this, the third factor also suggests that discovery should be granted, as this application is clearly not an attempt to circumvent any foreign proof gathering restrictions. "[T]he burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782." *In re Application of Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014); *see also Euromepa*, 51 F.3d at 1099-1100 ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."). The discovery sought here is specifically to identify the fund flows between the Motylev Disclosed Companies and other companies the Joint Trustees believe were used in the furtherance of Mr. Motylev's scheme. This will not circumvent the English Bankruptcy Proceedings, but rather, be used in support of those proceedings. To the extent additional assets are identified, the Joint Trustees will be able to recover those assets for the benefit of Mr. Motylev's creditors.

Finally, this application is not burdensome. Bank records are routinely sought and produced via § 1782 petitions. *See, e.g., Hornbeam Corp.*, 2014 WL 8775453, at *5 (ordering production of bank records, including wire transfers, pursuant to § 1782); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 437-39 (S.D.N.Y. 2011) (granting § 1782 petition seeking disclosure of account statements, account opening materials, customer files, and due diligence materials).

### III. THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant Petitioners' application *ex parte*. *Ex parte* applications under 28 U.S.C. § 1782 are routine in this district. *See In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for*

9

*Use in Foreign Proceedings*, 15-mc-417 (LAK), 2016 WL 702327, at *5 (S.D.N.Y. Feb. 18, 2016); *In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014).  As noted by Judge Kaplan:

> Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte*. Where, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas.

Order, *In re Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010), ECF No. 2.  The US Banks will not be prejudiced by granting Petitioners' application *ex parte* as they will have an opportunity to challenge the discovery Petitioner seeks once it is served.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court endorse the Proposed Order annexed to the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings ("Application") and to serve the subpoenas annexed to the Application as Exhibits A-H.

Dated: December 27, 2021
New York, New York

**BAKER & HOSTETLER LLP**

*s/Oren J. Warshavsky*
Oren J. Warshavsky
owarshavsky@bakerlaw.com
Tatiana Markel
tmarkel@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201