**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re *Ex Parte* Application of Kevin Hellard and
Jonathan Thielmann, Joint Trustees in Bankruptcy of
Anatoly Leonidovich Motylev, pursuant to 28 U.S.C.
§ 1782 to Conduct Discovery for Use in a Foreign
Proceeding,

**Misc. Case No. 21-MC-864**

Petitioner.

---

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR MEGAINVEST**
**OVERSEAS LIMITED'S LIMITED MOTION TO VACATE**
**THE COURT'S *EX PARTE* ORDER AND TO QUASH SUBPOENAS FOR THE**
**PRODUCTION OF DOCUMENTS FOR USE IN A FOREIGN PROCEEDING**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ................................................................................................4

    **A.**    Megainvest's Sale of RESO .......................................................................4

    **B.**    The English Bankruptcy Proceeding .........................................................4

    **C.**    The Joint Trustees Threatened Megainvest With a Lawsuit Related To The RESO Transaction ..........................................................................5

ARGUMENT ........................................................................................................................7

II.    Petitioners Failed to Satisfy The Statutory Requirements Because The Evidence Sought Is Not "For Use" In A Foreign Tribunal.................................................8

III.    Several *Intel* Factors Weigh Heavily In Favor of Vacating The Order And Quashing The BNY Subpoena Requests ........................................................12

    **A.**    *Intel* Factor 1:  Because Megainvest Would Be A Defendant To The Threatened English Proceeding, The Joint Trustees May Seek The Requested Discovery Through Traditional Means ............................12

    **B.**    *Intel* Factor 3:  The Application Was Made In Bad Faith.........................13

    **C.**    *Intel* Factor 4:  The Application Is Overly Intrusive And Burdensome ..............................................................................................14

IV.    The BNY Subpoena Requests Should Be Quashed For Seeking Discovery Beyond What Is Available Under Federal Rule of Civil Procedure 45 .........................................18

CONCLUSION......................................................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*In re App. of Auto-Guadeloupe Investissement S.A.*,
  28 U.S.C. Section 1782, No. 12 MC 221 RPP, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ............................................................................................................. 15

*In re App. Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l*,
  60 F. Supp. 3d 419 (S.D.N.Y. 2014)................................................................. 16

*In re Application of Caratube Int'l Oil Co.*,
  730 F. Supp. 2d 101 (D.D.C. 2010) ................................................................. 19

*Ayyash v. Crowe Horwath LLP*,
  No. 17-MC-482(AJN), 2018 WL 2976017 (S.D.N.Y. June 13, 2018)................... 11

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, LLP*,
  798 F.3d 113 (2d Cir. 2015)......................................................................... 8, 11

*Chevron Corp. v. Donziger*,
  2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .................................................. 18

*In re Digitechnic*,
  No. C07–414(JCC), 2007 WL 1367697 (W.D. Wash. May 8, 2007) .................... 19

*During v. City Univ. of N.Y.*,
  No. 05-cv-06992(RCC), 2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006) ................. 18

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995).....................................................................13, 17

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................... 16

*In re Imanagement Servs., Ltd.*,
  No. Misc. 05 Civ. 89(FB), 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ............ 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)................................................. 7, 8, 12, 13, 14, 16, 18

*Jones v. Hirschfeld*,
  219 F.R.D. 71 (S.D.N.Y. 2003) ..................................................................... 18

*In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
  No. 2:14-CV-00797-GMN, 2015 WL 3439103 (D. Nev. May 28, 2015) .............. 17

*Kilby v. CVS Pharm., Inc.*,
  No. 09-CV-2051-MMA(KSC), 2017 WL 1424322 (S.D. Cal. Apr. 19, 2017) ........ 17

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018)............................................................................ 7

*Lazaridis v. Int'l Ctr. for Missing and Exploited Children, Inc.*,
    760 F. Supp. 2d 109 (D.D.C. 2011) ................................................................ 11

I*n re Application For An Order Permitting Metallgesellschaft AG To Take Discovery*,
    121 F.3d 77 (2d Cir. 1997) ............................................................... 10, 12, 17

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
    No. 15 MISC. 319 LTS, 2015 WL 5824505 (S.D.N.Y. Oct. 16, 2015) .................. 15

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
    384 F. Supp. 2d 45, 54 (D.D.C.2005) ............................................................ 14

*In re Postalis*,
    No. 18-MC-497(JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) .............. 11, 18

*Sec. & Exch. Comm'n v. Ripple Labs, Inc.*,
    No. 20-CV-10832(SN), 2021 WL 1335918 (S.D.N.Y. Apr. 9, 2021) .................... 18

*Soto v. Castlerock Farming & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) .................................................................. 19

*In re YS GM Marfin II LLC*,
    No. 20 MISC. 182(PGG), 2022 WL 624291 (S.D.N.Y. Mar. 2, 2022) .................. 12

*In re Warren*,
    No. 20 MISC. 208, 2020 WL 6162214 S.D.N.Y. Oct. 21, 2020) ........................ 12

*In re Application for an Ord. Pursuant to 28 U.S.C. 1782*,
    473 F. App'x 2 (D.C. Cir. 2012) .................................................................. 11

## Statutory Authorities

28 U.S.C. § 1782 ...................................................................................... 1, 7, 14

N.Y. Consolidated Laws, Banking Law – BNK § 128 .................................... 3, 15, 18

## Rules and Regulations

Fed. R. Civ. P. 5.2(a) ...................................................................................... 7

Fed. R. Civ. P. 26 .............................................................................. 14, 15, 18

Fed. R. Civ. P. 45 .................................................................................... 3, 18

Intervenor Megainvest Overseas Limited ("Megainvest") respectfully submits this Memorandum of Law in support of its Limited Motion to Vacate the Court's March 4, 2022 order ("Order") granting Applicants Kevin Hellard and Jonathan Thielmann's *ex parte* application to take discovery pursuant to 28 U.S.C. § 1782 (the "Application") insofar as it permitted discovery to request numbers 13, 28, 45, and 91[1] of the resulting subpoena issued to Bank of New York Mellon Corporation ("BNY Subpoena Requests") and to Quash the BNY Subpoena Requests.[2]

## PRELIMINARY STATEMENT

Intervenor's case is simple:  a petitioner cannot use Section 1782 as a fishing expedition tool nor should a petitioner be permitted to propound a laundry list of document requests on a third party, purportedly for use in one proceeding, when it is clearly for use in another proceeding that was concealed from the application.  Yet that is precisely what Petitioners are seeking to do here. Kevin Hellard and Jonathan Thielmann (the "Joint Trustees") are using the BNY Subpoena Requests to seek from this Court nothing more than improper pre-action discovery from Megainvest that may be used against it in a threatened lawsuit in England (the "Threatened English Proceeding")—a proceeding that is conveniently omitted from the 590 pages accompanying the Joint Trustees' Application.  Though the Joint Trustees represent to this Court that the discovery they are seeking is "for use" in the English Bankruptcy Proceeding, this is patently not the case. On October 11, 2021, the Joint Trustees' English counsel served Megainvest with a pre-action letter of claim (the "October Letter of Claim"), asserting that the Joint Trustees intend to bring suit against Megainvest for its sale of the non-state Pension Fund Savings Fund RESO to Mr. Motylev

---

[1]  To the extent requests 17 and 44 are interpreted as seeking documents relating to Megainvest transactions, such discovery should be denied for the reasons identified in the Motion.

[2]  Bank of New York Mellon Corporation—the entity subject to this Court's *ex parte* March 4, 2022 order— has no responsive documents to the BNY Subpoena Request, as it is the wrong corporate entity.  Bento Decl. ¶ 2.

(the "RESO Transaction"),[3] seeking monetary relief in relation to the funds paid by Mr. Motylev to Megainvest pursuant to that transaction (the "RESO Proceeds").   Additionally, the Joint Trustees' counsel warned that they would be "considering additional causes of action" against Megainvest.  Through their Application, the Joint Trustees are making good on that threat.

The Joint Trustees' Application fails for numerous independent reasons:

*First,* the Application fails to satisfy the statutory requirement that the evidence sought be "for use" in a foreign proceeding.  As discussed below, that the discovery sought is only "for use" in the Threatened English Proceeding, and not in the English Bankruptcy Proceeding, is underscored by three facts.  To begin with, the English Bankruptcy Court has no use for this discovery because assets coming from the RESO Transaction are not assets of the bankrupt.  For the English Bankruptcy Proceeding to "trace" any assets related to the RESO Transaction, those assets would have had to have belonged to or be vested in the bankrupt at the commencement of the bankruptcy.  The RESO Proceeds do not belong to the bankrupt.  Thus, for the Joint Trustees to make claims concerning the RESO Proceeds, the Joint Trustees would have to bring a separate proceeding (like the Threatened English Proceeding) and litigate the validity of the RESO Transaction.  Only if successful, would the Joint Trustees then be in a position to distribute the proceeds to creditors in the Bankruptcy Proceeding.  However, under no circumstances would the English Bankruptcy Court need or be able to "trace" these funds.  What the Joint Trustees seek to do here is place the proverbial cart before the horse.  Additionally, that this would be used for the Threatened English Proceeding is no logical leap, as the Joint Trustees themselves served on Megainvest the October Letter of Claim, explaining their intention to bring the Threatened English

---

[3]  Although the October Letter of Claim alleges additional potential claims against Megainvest, those claims are not adressed in this Motion because only the RESO Transaction was the subject of the *Ex Parte* Application and Order.

Proceeding.  Finally, that the BNY Subpoena Requests seek information beyond the RESO Transaction (which occurred in 2014), including *all* documents related to *all* transactions involving Megainvest (and its affiliates) for a period of **13 years**, suggests that the Joint Trustees are fishing for "additional causes of action" to file against Megainvest.

*Second*, the Joint Trustees could seek to obtain the information sought here directly from Megainvest, who would be a party to the Threatened English Proceedings, thus weighing heavily against Section 1782 assistance.

*Third*, the Joint Trustees' Application was made in bad faith because the discovery sought will not and cannot be used in the English Bankruptcy Proceeding, and instead is intended for use in the Threatened English Proceedings (or a similar action).  The Joint Trustees failed to disclose this fact to this Court.  This alone is reason to quash the BNY Subpoena Requests.

*Fourth*, the BNY Subpoena Requests are overly broad and intrusive as they seek *all* documents related to *all* transactions involving Megainvest (and its affiliates) for a period of 13 years, which is far broader than necessary to capture documents related to the RESO Transaction (i.e. the purported sole basis underlying the Application).

*Fifth*, any information related to the RESO Transaction (which closed in 2014 and is the only basis for which the BNY Subpoena Requests were made), may not even exist as BNY is only legally required to keep account records for six years.  *See* N.Y. Consolidated Laws, Banking Law – BNK § 128.

*Finally*, the BNY Subpoena Requests should be quashed as they seek discovery beyond what is permitted under Federal Rule of Civil Procedure 45.

Accordingly, Megainvest's Limited Motion to Vacate the Order and to Quash the BNY Subpoena Requests should be granted.  Allowing Section 1782 discovery here will transform the

statute into a pre-action fishing expedition tool to obtain discovery from anyone involved in any transaction with a bankrupt regardless of any factual or legal basis to impugn the transaction and would subject third parties to burdensome and irrelevant discovery, turning U.S. district courts into clearinghouses for global evidence gathering.

## FACTUAL BACKGROUND

### A.    Megainvest's Sale of RESO

Megainvest is a holding company incorporated in the British Virgin Islands (within a wider structure of privately owned companies (known collectively as the "RESO Group")).  Saveliev Decl. ¶ 4.  The owners of Megainvest are the brothers Sergey and Nikolay Sarkisov ("Messrs. Sarkisovs"), who each own 50% of the shares in Megainvest.  Saveliev Decl. ¶ 4.  Messrs. Sarkisovs are successful entrepreneurs with interests in insurance, other financial services, and medical clinics business in Russia and other former Soviet Union countries.  Saveliev Decl. ¶ 4.

The RESO Group was founded in 1991 by Sergey Sarkisov and was one of Russia's first private insurance operations.  Saveliev Decl. ¶ 5.  The main operating company within the RESO Group is RESO Garantia, a privately owned insurance company incorporated in Russia and the fifth largest insurer in Russia with sales of over US$1.5 billion and equity of over US$ 1 billion. Saveliev Decl. ¶ 5.

AXA, the world's third largest insurance company, is a 38.6% shareholder in RESO Garantia. Saveliev Decl. ¶ 6.

Mr. Motylev does not have and never had any ownership interest in Megainvest or the RESO Group.  Saveliev Decl. ¶ 7.

### B.    The English Bankruptcy Proceeding

Anatoly Leonidovich Motylev was charged in absentia with the crimes of fraud, embezzlement, money laundering, and falsification of accounts of a financial institution.  ECF 5

(Hellard ¶ 8).  Mr. Motylev has been held personally responsible for a large proportion of the debts owed by collapsed banks, including the Russian Credit Bank ("<u>RCB</u>").  ECF 5 (Hellard ¶¶ 7–8).

On February 19, 2018, Mr. Motylev was declared bankrupt pursuant to an order of the Arbitrazh Court of the City of Moscow, Russia (the "<u>Russian Bankruptcy Proceedings</u>").  ECF 5 (Hellard ¶ 9).  In September 2020, the English Court recognized the Russian Bankruptcy order, and on November 2, 2020, Mr. Motylev was declared bankrupt pursuant to a bankruptcy order of the English High Court ("<u>the English Bankruptcy Proceeding</u>").  ECF 5 (Hellard ¶¶ 10, 12, 26).  Jonathan Thielmann and Kevin Hellard were two of the three joint bankruptcy trustees originally appointed.  ECF 5-2, p. 2.

**C.    The Joint Trustees Threatened Megainvest With a Lawsuit Related To The RESO Transaction**

On October 11, 2021, Megainvest received the October Letter of Claim ("<u>October Letter of Claim</u>") from Cameron Mckenna Nabarro Olswang LLP ("<u>CMS</u>") on behalf of the Joint Trustees asserting, in no uncertain terms, that the Joint Trustees "intend to bring proceedings against [it] in England" for allegedly "collud[ing] with Mr Motylev" by entering into "not *bona fide* transactions" in order to "conceal[] assets misappropriated by [Mr. Motylev] in an attempt to put them beyond the reach of his creditors."  Saveliev Decl. Ex. 01 ¶ 1.4.  "A letter of claim is a pre-action letter required by [English law] to put a party on notice that court proceedings will be brought against them."  Hacker Decl. ¶ 14.

The Joint Trustees claimed that Megainvest colluded with Mr. Motylev to put assets beyond the reach of Mr. Motylev's creditors through the November 17, 2014 RESO Transaction, which the Joint Trustees assert was not *bona fide*.  Saveliev Decl. Ex. 01 ¶ 1.4.  CMS indicated that the investigation was ongoing and that the Joint Trustees "are considering additional causes

of action against the parties to the RESO Transaction . . . as well as the beneficial owners of those companies." Saveliev Decl. Ex. 01 ¶ 1.6.

On December 31, 2021, counsel for Megainvest responded to the October Letter of Claim, refuting the allegations advanced by the Joint Trustees and explaining that those allegations were legally incoherent, unsupported by any evidence, and flatly contradicted by the factual record. This was because (among other reasons):

- The October Letter of Claim did not point to any evidence that Megainvest had any dealings with the Debtor prior to the RESO Transaction;

- Neither Megainvest nor any of its affiliates held or hold any funds for the Debtor, nor did they have any prior relationship with the Debtor preceding the RESO Transaction;

- The acquisition of the RESO Fund was one of many pension fund acquisitions made by the Debtor;

- Publicly available data for comparable deals undertaken at the relevant time do not support a finding that the RESO Transaction was overvalued;

- The RESO Transaction was the outcome of a competitive sales process involving three unconnected bidders, which included the Debtor's group; and

- A 'Big 4' accounting firm led the negotiations on behalf of one of the bidding parties, which had made a comparable proposal to the Debtor's.

Saveliev Decl. Ex. 02.

Despite these facts, the Joint Trustees continued to pursue the BNY Subpoena Requests filed with this Court just days prior.  Specifically, the BNY Subpoena Requests request the following:

- Document Request 13:  "All documents regarding any transactions, including but not limited to, any US-dollar denominated transactions, involving BNY accounts held by Megainvest."

- Document Request 28:  "All documents regarding any transactions, including but not limited to, any US-dollar denominated transactions, involving Megainvest."

- Document Request 45: "All documents regarding any transactions, including dollar denominated transactions, involving Credit Suisse accounts held by Megainvest."

- Document Request 91: "All documents regarding any transactions, including dollar denominated transactions, from or to Credit Suisse international account number ████████████ 6200 1."[4]

## **ARGUMENT**

Section 1782 "authorizes, but does not require," that district courts provide judicial assistance to applicants for use in foreign proceedings. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004); *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018) ("Section 1782 states that a court 'may order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary.").

A district court may grant an application under Section 1782 where (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. 28 U.S.C. § 1782.

Once these statutory prerequisites are met, a district court has discretion to deny the Section 1782 request and quash the Subpoenas. *Intel*, 542 U.S. 241, 264 (2004). The Supreme Court has identified four factors to guide the district court's discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or

---

[4]   Pursuant to Federal Rule of Civil Procedure 5.2(a), Megainvest is redacting all but the last four digits of the identified financial account number, which notably the Joint Trustees failed redact in their filings.

agency abroad to U.S. federal-court judicial assistance"; (3) whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

Because the Application fails to meet the statutory requirements, the Order should be vacated as to the BNY Subpoena Requests and/or quash those requests in their entirety.

## II.   **Petitioners Failed to Satisfy The Statutory Requirements Because The Evidence Sought Is Not "For Use" In A Foreign Tribunal**

The Application fails the second statutory requirement, namely the discovery sought by the Joint Trustees is not "for use" in the English Bankruptcy Proceeding.  The Second Circuit requires a foreign party to go beyond a mere declaration that the evidence it seeks is relevant and would be "for use" in a foreign proceeding.  *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 122 n.11 (2d Cir. 2015).  "[T]he burden [is] on a § 1782 applicant to establish that it will have some means of actually using the evidence in the foreign proceeding."  *Id.*  As directed in *Certain Funds*, "[b]y adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'"  *Id.* at 120 (citation omitted).  Here, the Joint Trustees do not—and cannot—meet this standard.

The Joint Trustees attempted to fashion the Application as an attempt to "trace the funds misappropriated by Mr. Motylev . . . and to bring claims in the English Bankruptcy Proceeding to recover those assets wherever they may be found."  ECF  5 (Hellard Decl. ¶ 131).  The Joint Trustees even go so far as to characterize their request as seeking "information on the location of *Mr. Motylev's asset*s."  ECF 4, p. 8–9 (emphasis added).  And, in fact, this Court's *Ex Parte* Order relied in part on the suggestion that "the additional discovery would assist the English High Court

by providing information on the location of *Mr. Motylev's assets* to be recovered."  ECF 7, p. 3–4 (emphasis added).  However, the English Bankruptcy Court would not allow such a tracing to occur because the assets that the Joint Trustees are seeking to trace with respect to Megainvest, namely the RESO Proceeds, are not property of the bankrupt.  Hacker Decl. ¶¶ 44–50.  How could they be?  The Joint Trustees themselves admit that Mr. Motylev does not control Megainvest.  *See* ECF 5 (Hellard Decl. ¶ 123) ("The Joint Trustees do not suggest that Motylev controls Megainvest.").  It is indisputable that the property subject to the RESO Transaction—payments made to Megainvest in consideration for the transfer of the shares in RESO Pension Investments—was transferred to Megainvest prior to the initiation of any bankruptcy proceeding.[5]  *See* Hacker Decl. ¶ 46.  Further, the type of claim the Joint Trustees would need to bring in order to set aside the RESO Transaction and recoup funds—i.e., claims under a statutory avoidance provision (under the English Insolvency Act 1986, Section 423) and the common law sham claim—necessarily assume that "the debtor has divested himself of already identified property at an undervalue." Hacker Decl. ¶¶ 31–33.  In other words, in order to have overpaid for the RESO Transaction, Mr. Motylev must have first paid and transferred title to the RESO Proceeds to Megainvest and its affiliates, such that those funds are no longer his assets.

To properly bring the assets from the RESO Transaction within the property of the bankrupt, the Joint Trustees would first be required to bring a *separate* proceeding in England. Hacker Decl. ¶¶ 51–53.  *Only if* the Joint Trustees were successful in that separate proceeding would the Joint Trustees obtain monetary relief concerning the RESO Proceeds.  Hacker Decl. ¶ 50.  However, under no circumstances would the English Bankruptcy Proceeding require the

---

[5]   The RESO Transaction occurred on November 17, 2014 (Saveliev Decl. ¶ 11(1)), while the Russian Bankruptcy Proceedings were not initiated until February 19, 2018 (ECF 5 (Hellard ¶ 9)).

"tracing" of those funds as the funds would have arisen from recovery claims and are thus not the result of a vindication of "property rights the Debtor would have had *at the commencement* of the bankruptcy." Hacker Decl. ¶¶ 49–50 (emphasis added). Therefore, the English Bankruptcy Proceeding would have no use for this discovery, and the only plausible use for this discovery would be for a separate civil proceeding that is not the subject of this Application. *See* Hacker ¶ 51.

That the Joint Trustees' Application as to Megainvest was pretextual and instead seeking discovery for use in pleading a separate proceeding against Megainvest in England is confirmed for two additional reasons. *First*, the Joint Trustees have already represented to Megainvest in their October Letter of Claim—a letter legally required to be sent prior to the initiation of a civil proceeding in England—that this is exactly what the Joint Trustees intend to do. The October Letter of Claim stated in no uncertain terms that the Joint Trustees "intend to bring proceedings against [it] in England" for allegedly "collud[ing] with Mr Motylev" by entering into "not *bona fide* transactions" in order to "conceal[] assets misappropriated by [Mr. Motylev] in an attempt to put them beyond the reach of his creditors." Saveliev Decl. Ex. 01 ¶ 1.4. The October Letter of Claim further indicated that the Joint Trustees' investigation was ongoing, and that the Joint Trustees "are considering additional causes of action against the parties to the RESO Transaction." *Second*, the Joint Trustees' requests for discovery here are not limited to the RESO Transaction, but instead seek "[a]ll documents regarding *any* transactions" for a period from January 1, 2009 to present. ECF 1-2 (emphasis added).

This use of Section 1782 is improper. The Second Circuit has directed that "[i]f the judge . . . suspects that the [§ 1782 discovery] request is a 'fishing expedition' . . . the district court should deny the request." *In re Application For An Order Permitting Metallgesellschaft AG To*

10

*Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (citation omitted); *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at \*5 (S.D.N.Y. Dec. 20, 2018) ("Seeking discovery under § 1782 for an improper purpose, namely for pre-litigation discovery otherwise not permitted under the Federal Rules of Civil Procedure, is bad faith just as a harassing application is in bad faith.); *see also Lazaridis v. Int'l Ctr. for Missing and Exploited Children, Inc.,* 760 F. Supp. 2d 109, 115 (D.D.C. 2011), *aff'd sub nom.* In re Application for an Ord. Pursuant to 28 U.S.C. 1782, 473 F. App'x 2 (D.C. Cir. 2012) (denying application under Section 1782 because applicant's "wide-ranging request" suggested applicant sought information more for "his general use than for use by the Greek tribunals in their investigation or prosecution").

The Joint Trustees' attempt to use this Application to obtain discovery concerning whether to bring future claims against Megainvest is impermissible.[6]  The Second Circuit has rejected attempts to seek information where its only use would be determining whether to challenge certain claims.  *See Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 (2d Cir. 2015).  Similarly, "[f]or the documents and records demonstrating . . . [a] financial relationship," courts in this Circuit have cautioned against "using the § 1782 petition as a fishing expedition to determine if it should pursue litigation."  *Ayyash v. Crowe Horwath LLP*, No. 17-MC-482(AJN), 2018 WL 2976017, at \*3 (S.D.N.Y. June 13, 2018) (denying Application where Petitioner sought to use the financial relationship to determine "which parties . . . if any, it can seek recovery from" and noting "[e]ven if the legal or financial relationship materials can be construed as "for use" in a foreign proceeding, the Court would use its discretion to deny the request for those materials"); *see also In re an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d

---

[6]  If this Court is inclined to deny this Motion to Vacate, Megainvest respectfully requests that this Court issue a protective order limiting any discovery provided for use only in the English Bankruptcy Proceedings, and preventing the Joint Trustees from using this evidence in the Threatened English Proceedings, or any other proceeding.

Cir.1997) (noting that if a court "suspects that the [§ 1782 discovery] request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request" (citation omitted)).

### III.   Several *Intel* Factors Weigh Heavily In Favor of Vacating The Order And Quashing The BNY Subpoena Requests

Because the Joint Trustees have failed to satisfy the statutory prerequisites under Section 1782, this Court need not engage in further analysis.  But in the event that this Court determines otherwise, the *Intel* factors heavily weigh against the Application.

### A.   *Intel* Factor 1:   Because Megainvest Would Be A Defendant To The Threatened English Proceeding, The Joint Trustees May Seek The Requested Discovery Through Traditional Means

The first *Intel* factor weighs against the Application because the Joint Trustees may seek the discovery they wish to obtain through the Application through traditional avenues in the Threatened English Proceeding, including possible pre-action disclosure and general discovery. "Under the first *Intel* factor, courts consider whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid."  *In re YS GM Marfin II LLC*, No. 20 MISC. 182 (PGG), 2022 WL 624291, at *8 (S.D.N.Y. Mar. 2, 2022) (quoting *In re Warren*, No. 20 MISC. 208, 2020 WL 6162214, at *5 S.D.N.Y. Oct. 21, 2020) (internal quotations omitted).  The Supreme Court has explained that the "need for § 1782(a) aid generally is not as apparent" when the subpoena targets are parties to the foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  The driving question is therefore whether the "evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264.

Here, although Megainvest is not a party to the English Bankruptcy Proceeding (or even the recipient of the subpoena), the BNY Subpoena Requests are seeking discovery into Megainvest's accounts and activity.  Thus, for all practical purposes, the BNY Subpoena Requests are seeking information from Megainvest—a would-be defendant in the Threatened English Proceeding, i.e., the only proceeding in which this discovery would be of use.  *See supra* Section II; Hacker Decl. ¶¶ 53–54.  This weighs against allowing the Application as the evidence may be obtainable "absent § 1782(a) aid."  *See Intel*, 542 U.S. at 264.

The Joint Trustees could seek the exact information sought from the BNY Subpoena Requests directly from Megainvest in England via two mechanisms.  Hacker Decl. ¶¶ 55–60.  First, the Joint Trustees could seek pre-action disclosure (i.e., pre-litigation discovery in England).  Hacker Decl. ¶ 56-57.  Second, the Joint Trustees could rely on standard disclosure from Megainvest once the Threatened English Proceedings have commenced.  Hacker Decl. ¶ 58-60.  Therefore, the Joint Trustees have other (more appropriate) ways to seek discovery for its intended use—i.e., use in the Threatened English Proceeding.

The first *Intel* factor therefore weighs heavily against discovery.

## B.   *Intel* Factor 3:  The Application Was Made In Bad Faith

The third *Intel* factor weighs against the Application because the Joint Trustees' Application as to Megainvest was pretextual and made in bad faith.  *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995) (noting that a district court may deny a petition in full where it was "made in bad faith . . . or unreasonably seeks cumulative or irrelevant materials"); *see also In re Imanagement Servs., Ltd.*, No. Misc. 05 Civ. 89 (FB), 2005 WL 1959702, at *5 n.6 (E.D.N.Y. Aug. 16, 2005) (holding that a Section 1782 that is pretextual or motivated by bad faith "must be denied").  As explained *supra* Section II, the discovery requested in the BNY Subpoena Requests has no relevance to the English Bankruptcy Proceeding.

Moreover, the Joint Trustees failed to disclose to this Court that they forewarned Megainvest about their intent to pursue the Threatened English Proceeding on the very subject on which they are seeking discovery.  Lastly, the BNY Subpoena Requests can be characterized as nothing more than a fishing expedition, given that it seeks 13 years of "any and all" transactions and financial information.

The Joint Trustees' tactic of using this Court to gain pre-litigation discovery from a third party is especially abusive because the Joint Trustees could, in the normal course of proceedings, seek to gain this very information from Megainvest through pre-action and standard disclosure in England.  *See supra* Section III(A); *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F.Supp.2d 45, 54 (D.D.C.2005) ("The Court is wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit."); *see also In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. §1782*, 2019 WL 168828, at *11 (D.N.J. Jan. 10, 2019) ("A party's failure to invoke local discovery procedures remains significant, and may be considered.").

The third *Intel* factor therefore weighs heavily against discovery.

## C.     *Intel* Factor 4:  The Application Is Overly Intrusive And Burdensome

Finally, the discovery sought is unduly burdensome and intrusive.  Under the Federal Rules of Civil Procedure, which are incorporated by reference in Section 1782, a district court "*must* limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added); 28 U.S.C. § 1782(a).

The BNY Subpoena Requests fail to conform with the requirements of Federal Rule of Civil Procedure 26 by seeking evidence that is (1) not narrowly tailored nor proportional to the needs of the foreign proceeding, (2) irrelevant to the English Bankruptcy Proceeding (as well as time periods irrelevant to the Threatened English Proceeding), (3) duplicative of discovery that could be sought in the *actual* foreign proceeding (i.e., the Threatened English Proceeding), and (4) likely no longer exists because the New York banking laws only require that account information be retained for six years.  N.Y. Consolidated Laws, Banking Law – BNK § 128.

      1.     The Application Seeks Evidence that Is Not Narrowly Tailored Nor Proportional to the Needs of the Foreign Proceeding

Courts often deny § 1782 discovery where the applicant requests "[a]ll documents" and "all communications" or otherwise seeks discovery of breadth.  *See, e.g., In re App. of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12 MC 221 RPP, 2012 WL 4841945, at *9 (S.D.N.Y. Oct. 10, 2012) (granting motion to quash several § 1782 discovery requests that sought "[a]ll communications" or "[a]ll documents"); *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG,* No. 15 MISC. 319 LTS, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 16, 2015) (denying § 1782 application because, inter alia, it sought overbroad discovery, and holding that petitioners' "request for disclosure of every financial transaction these companies have engaged in with 11 different banks, along with considerable additional financial information, sweeps far too broadly to be proper for that limited purpose.").

Here, the Joint Trustees fail to make even the slightest attempt to limit their requests to documents proportional (or even arguably relevant) to the English Bankruptcy Proceeding. Instead, in four requests, the Joint Trustees seek "[a]ll documents" from "January 1, 2009 to present" related to "any transaction[]" involving a BNY account held by or involving Megainvest,

defined as "any parent or subsidiary entity, any other entity owned (in whole or part) by or controlled by Megainvest and/or its Affiliated Persons, and any predecessor or successor thereof." Their requests are asking for over 13 years of financial information for Megainvest and all of its Affiliated Persons, including "all employees, consultants, agents, representatives, entities, subsidiaries, or parents." ECF 1-2 (BNY Subpoena Requests at 5).

The overbreadth of these requests is even clearer when coupled with the fact that the Joint Trustees are purporting to be interested only in the transfer of assets that occurred in 2014, in connection with the RESO Transaction. *See* ECF 5 (Hellard ¶ 127) ("The Joint Trustees seek records of the dollar denominated transactions associated with the RESO Sale and Purchase Agreement"). However, the BNY Subpoena Requests seek information beyond documents related to the RESO Transaction (and therefore not relevant to its purported claims). The Joint Trustees presumably drafted the BNY Subpoena Requests this broadly to advance their investigation into "additional causes of action against the parties to the RESO Transaction." Saveliev Decl. Ex. 01 ¶ 1.6. The BNY Subpoena Requests are thus not proportional to the needs of the foreign proceeding and weigh heavily against the Application. *See, e.g., In re App. Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol. Int'l*, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) (denying § 1782 discovery because requests were unduly burdensome, despite statutory factors and first three *Intel* factors being met).

Moreover, the BNY Subpoena Requests are not narrowly tailored and, therefore, the fourth *Intel* factor weighs against discovery. *See In re Ex Parte Application of Qualcomm Inc*., 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (holding the fourth *Intel* factor weighed against the application where requests "are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information.") (internal citation omitted). The

Joint Trustees cannot expect this Court to rewrite their "discovery request to obtain the optimum result for that party [as t]hat is counsel's job." *See also Kilby v. CVS Pharm., Inc.,* No. 09-CV-2051-MMA(KSC), 2017 WL 1424322, at *4, n.3 (S.D. Cal. Apr. 19, 2017).

> 2.   The Application Seeks Evidence that Is Irrelevant to the Foreign Proceedings

The BNY Subpoena Requests seek evidence that is irrelevant to the English Bankruptcy Proceeding because, as discussed *supra* Section II, the English Bankruptcy Court does not have authority to trace assets related to the RESO Transaction because those assets do not belong to the bankrupt. Even setting that aside, the BNY Requested Subpoena does not even purport to limit itself to the RESO Transaction, but instead seeks all documents related to all transactions Megainvest was involved in for 13 years, including 5 years of transactions prior to the RESO Transaction. *See Euromepa S.A.*, 51 F.3d at 1101 n.6 (2d Cir. 1995) (noting that a district court may deny a petition in full where it was "made in bad faith . . . or unreasonably seeks cumulative or irrelevant materials").

> 3.   The Application Seeks Evidence Duplicative of Discovery That Could Be Sought In the Threatened English Proceeding

The BNY Subpoena Requests should be denied because the Joint Trustees are seeking discovery that they could seek from Megainvest in the Threatened English Proceeding, i.e., the only proceeding where it is potentially open to the Joint Trustees to set aside the RESO Transaction. *See, e.g., In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (when the discovery sought is "equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative"); *In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.,* No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) ("When the information sought is equally available

through the foreign proceedings from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome.").

4. The Application Seeks Evidence That Likely No Longer Exists

Under New York law, banking entities, such as BNY, are only required to retain copies of bank statements for six years (BNK § 128). Thus, documents demonstrating transfers made prior to 2016 likely do not exist, rendering the enforcement of this subpoena futile and not proportional to the needs of the case. *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *6 (S.D.N.Y. Dec. 20, 2018) (applying Federal Rule 26 which "limits discovery to evidence that is relevant to any party's claim or defense and "proportional to the needs of the case.").

The fourth *Intel* factor therefore weighs heavily against discovery.

## IV. The BNY Subpoena Requests Should Be Quashed For Seeking Discovery Beyond What Is Available Under Federal Rule of Civil Procedure 45

The BNY Subpoena Requests should also be quashed under Federal Rule of Civil Procedure 45, which "governs discovery of non-parties." Fed. R. Civ. P. 45. Subpoenas "issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement." *During v. City Univ. of N.Y.,* No. 05-cv-06992 (RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Accordingly, courts "must limit the discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit." *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)); *see Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-CV-10832 (AT)(SN), 2021 WL 1335918, at *2 (S.D.N.Y. Apr. 9, 2021). "Trial courts have broad discretion to determine if a subpoena imposes an undue burden." *See Ripple Labs, Inc.*, 2021 WL 1335918, at *2 (*citing Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003))..

As explained above, the BNY Subpoena Requests seek documents that go well beyond what is relevant for the English Bankruptcy Proceeding (and even the Threatened English Proceeding not before this Court), and could in any event be sought from parties to the Threatened English Proceeding (if ever commenced).  *See supra*.  In circumstances "where plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Soto v. Castlerock Farming & Transp., Inc*., 282 F.R.D. 492, 505 (E.D. Cal. 2012); *see also In re Application of Caratube Int'l Oil Co*., 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (finding that "the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction.") (internal citation omitted); *In re Digitechnic*, No. C07–414 (JCC), 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) ("Digitechnic has not even tried to obtain any of the discovery sought here by way of French discovery tools . . . [although] there is no 'exhaustion' requirement in § 1782 . . . this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it." (emphasis omitted)).

## **CONCLUSION**

For the foregoing reasons, Megainvest respectfully requests that the Court vacate the Order insofar as it permitted discovery of the BNY Subpoena Requests and quash the BNY Subpoena Requests.

Dated:  April 21, 2022                    Respectfully submitted,

                                          /s/ *Michael Carlinsky*
                                          _____

                                          Michael Carlinsky
                                          Lucas V.M. Bento
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          51 Madison Avenue, Floor 22
                                          New York, NY 10010
                                          Telephone: (212) 849-7000
                                          Facsimile: (212) 849-7100
                                          michaelcarlinsky@quinnemanuel.com
                                          lucasbento@quinnemanuel.com

                                          Valerie Ramos (*pro hac* forthcoming*)*
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          1300 I St. NW Suite 900
                                          Washington, D.C., 20005
                                          Telephone:  (202) 538-8000
                                          Fax:  (202) 538-8100
                                          valerieramos@quinnemanuel.com

                                          *Attorneys for Intervenor*
                                          *Megainvest Overseas Limited*