USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/19/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
IN RE: EX PARTE APPLICATION OF KEVIN HELLARD
AND JONATHAN THIELMANN, JOINT TRUSTEES IN          1:21-MC-00864 (GHW)(KHP)
BANKRUPTCY OF ANATOLY LEONIDOVICH MOTYLEV,
PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT             **ORDER**
DISCOVERY FOR USE IN A FOREIGN PROCEEDING
------------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

Petitioners Kevin Hellard and Jonathan Thielmann are Joint Trustees ("Joint Trustees") in the English Bankruptcy of Anatoly Leonidovich Motylev. Motylev was a Russian banker who was responsible for the collapse of several banks and pension funds that he controlled. (ECF No. 1 at 1.) According to the Joint Trustees, he embezzled from the banks and pension funds and laundered the money through more than 100 sham entities. (*Id.*) Motylev has been indicted for his crimes in Russia and was found liable for debts of institutions he defrauded. (*Id.*) His creditors are located all around the world, not just in Russia. (*See* ECF No. 4 at 9.)

In 2015, after the collapse of the banks and pension funds, Motylev fled to England from Russia. In 2018, he was declared bankrupt in Russa. (*Id.* at 1.) In November 2020, English Bankruptcy proceedings were initiated. (*Id.*) The English Court appointed the Joint Trustees to manage Motylev's bankrupt estate. (*Id.*)

The Joint Trustees are appointed by and report to the court in England. (*Id.*) They are tasked with, among other things, conducting an investigation into Motylev's background and operations to determine whether there are funds belonging to the bankrupt estate that were fraudulently transferred prior to Motylev being declared bankrupt that should be returned to the estate for the benefit of its creditors. (ECF No. 1 at 1.) This action was brought as part of the Joint Trustees' investigation. Specifically, they seek information from eight banks that they

1

believe Motylev used as correspondent banks to transact in United States ("U.S.") Dollars, including Bank of New York Mellon Corporation ("BONYM"). (ECF No. 4 at 4.)

One potentially fraudulent transaction identified by the Joint Trustees was the sale of the RESO Pension Fund by Megainvest to Motylev for approximately $18.6 million local consideration plus $107 million at closing plus $20.5 million deferred until a later date. (ECF No. 16 at 6.) The Joint Trustees state that the price was 40% over the value of the pension fund's assets. (*Id.*) A large portion of the funds ($79 million) used by Motylev to fund the transaction originated from Motylev-run Russian Kredit Bank ("RKB"). (*Id.*) RKB transferred moneys to nine different companies that in turn transferred the funds to Motylev-controlled Technomark LLC's bank account at Russian Standard Bank, which then lent Motylev $79 million to close the RESO Pension Fund sale. (*Id.*) Within eight days of the sale, the funds in Technomark's account at Russian Standard Bank were used to repay the loan. (*Id.*) This suspicious transaction formed the basis for Motylev being charged with money laundering in Russia. (*Id.*)

Megainvest has intervened in this action seeking to quash the Joint Trustee's subpoena on BONYM to the extent it seeks information pertaining to Megainvest. (ECF No. 10.) After filing its motion to quash, Megainvest filed a letter motion requesting the Court stay its decision on its motion to quash because of an impending ban by the United Kingdom ("U.K.") on the provision of certain services from the U.K to Russia and Russian persons, to be enacted as part of broad sanctions against Russia in response to Russia's invasion of Ukraine. (ECF No. 20.) The Joint Trustees oppose both requests. (ECF Nos. 12, 21.)

1. **Request to Stay**

Five factors are relevant to assessing whether a stay is appropriate: (1) plaintiff's interest in proceeding expeditiously balanced against prejudice to plaintiffs attendant to a stay; (2) the interests of defendants and any burden on them; (3) the interest of the Court in ensuring an efficient resolution of the case; (4) the interest of any third parties to the litigation; and (5) the public's interest. *GTFM, Inc. v. Park*, 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002).

In this case, none of the factors weighs in favor of a stay. As to the first factor – the Plaintiffs' interests – it goes without saying that the Joint Trustees' interest is in moving expeditiously to locate laundered money and prevent further dissipation of assets or destruction of records. Thus, the Joint Trustees would be prejudiced by a stay. The Defendant Banks who have been subpoenaed have not filed any motion to quash the subpoenas or joined in a request to stay. Thus, the second factor is neutral.

As to the third, fourth, and fifth factors, Megainvest argues that these weigh in favor of a stay, because a stay would preserve judicial resources on a matter that it argues may become moot in light of the U.K.'s potential ban on the provision of certain services to Russia and Russian persons. However, the potential ban on services that Megainvest raises does not appear to apply to court-appointed bankruptcy trustees whose cases may have ties to Russia. The Joint Trustees report to the Court in the U.K. and execute their responsibilities pursuant to their Court appointment for the benefit of creditors to a Russian actor. The Joint Trustees are not providing services to a Russian client, and Megainvest points to no law that would prohibit the Joint Trustees from seeking information through U.S. court process from entities located in

the U.S. The interests of the Court, the public, and third parties other that Megainvest are in fact mostly aligned with those of the Plaintiffs and weigh against a stay.

The only third party whose interest arguably weighs in favor of a stay is Megainvest, but that is only in its defensive interest in delay. This interest, assuming it is even legitimate, is outweighed by all the other factors that strongly militate against a stay.

Megainvest cites several cases, none of which compel a different conclusion. All involve impending laws or court decisions that would be case/issue dispositive. *See Planned Parenthood of N. New Eng. v. N.H. Att'y Gen.*, 2007 WL 329709 (D.N.H. Feb. 1, 2007) (case stayed because of pending legislation that would dispose of the litigation); *S. Glazer's Wine & Spirits, LLC v. Harrington*, 2022 WL 912032, at *1 (D. Minn. Mar. 29, 2022) (case stayed because governing law was about to be amended by state legislature and moot the case); *Kennedy v. Aegis Media Ams., Inc.*, 2021 WL 4077946, at *2 (S.D.N.Y. Sept. 7, 2021) (case stayed because the U.S. Supreme Court was about to rule on an issue that would be dispositive of the case). Megainvest points to no such impending law or court decision that would dispose of any issue in this case.

For all these reasons, the request for a stay is denied.

**2.      Motion to Quash**

This Court already determined that the Joint Trustees met the requirements of 28 U.S.C. § 1782 to issue subpoenas on the various banks holding records of U.S. Dollar transactions pertinent to their investigation of Motylev's transactions preceding his bankruptcy to

4

determine whether they involved funds that should be deemed property of the bankrupt estate, subject to any appropriate objections of the subpoenaed banks.[1]  (ECF No. 7.)

Megainvest's primary argument in support of its motion to quash is that the information obtained from BONYM could be used to sue Megainvest in England and that it is outside the purview of the Joint Trustees' authority to seek information to sue other parties.  (ECF No. 12 at 8.)  Megainvest also claims that the Joint Trustees must first seek discovery in England rather than through Section 1782.  (*Id.* at 11.)  Finally, it argues that the requests concerning it are overbroad and seek irrelevant information.  None of these arguments is persuasive.  (*Id.* at 15.)

To start, foreign bankruptcy trustees may utilize Section 1782 to obtain discovery that is relevant to potential claims to recover assets of a bankrupt estate.  *See, e.g. In re Application of Hill*, 2005 WL 1330769, *4-5 (S.D.N.Y. June 3, 2005) (allowing Hong Kong liquidators to seek discovery relevant to reconstructing financial records and identifying and recovering the debtor's assets, including through claims against third parties); *In re Gissin*, 649 Fed. App'x 27, 28 (2d Cir. 2016) (allowing similar discovery); *see also In re Catalyst Managerial Svc. DMCC*, 680 Fed. App'x 37, 39-40 (2d Cir. 2017) (finding wire transfer and transactional documents sought from 16 banks as relevant to the foreign proceeding despite intervenors' objection).

The expert declaration submitted by Megainvest regarding U.K. law concedes that Section 423 of the Insolvency Act of 1986 governs the bankruptcy proceeding in England, (ECF No. 14), and the expert declaration submitted by the Joint Trustees makes clear that the Act permits the Joint Trustees to bring legal proceedings under section 423 similar to the one that

---

[1] The Court understands that the banks, and BONYM in particular, are cooperating with the subpoenas and negotiating in good faith with the Joint Trustees to narrow some of the requests.

5

could be brought against Megainvest to recover assets fraudulently conveyed prior to the bankruptcy declaration, (ECF No. 17).  Thus, the information sought is relevant to the Joint Trustees' work—that is, locating assets belonging to the bankrupt estate that can be used to pay creditors.  This is a proper purpose under Section 1782.

Moreover, the Joint Trustees have proffered a clear explanation for why they seek information pertaining to Motylev's transactions with Megainvest—they view them as sham transactions to hide and protect Motylev's assets.  None of the cases cited by Megainvest are to the contrary.  *See, e.g., Certain Funds, Accts. And/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (recognizing that a creditor or interested party in a foreign liquidation proceeding may seek discovery in U.S. courts pursuant to Section 1782); *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017 (S.D.N.Y. Jun 13, 2018) (discovery viewed to be fishing expedition because applicant could not explain how the information could be used to bring claims in Lebanon whereas in this case, the Joint Trustees have articulated the precise claim they intend to bring against Megainvest—a claim to recover assets of the bankrupt estate).

Megainvest's argument that the Joint Trustees must first seek the information in England is incorrect as a matter of law.  *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (holding that section 1782 contains no exhaustion requirement.)  Relatedly, it is clear that the Joint Trustees' application is not an attempt to circumvent foreign proof-gathering restrictions.  Indeed, Megainvest concedes that this type of discovery can be sought in England.  (ECF. No. 14 at 17.)

Finally, Megainvest's argument that the Joint Trustees' subpoenas for information pertaining to Megainvest is overbroad and burdensome is unpersuasive.  Megainvest is not

being asked to produce anything and thus it will not be burdened by the requests. Whether any of the requests are burdensome on BONYM is another issue, and the Joint Trustees have indicated that they are negotiating in good faith with BONYM to the extent BONYM has any objections based on burden (or other grounds). (ECF No. 16 at 20.)

To the extent that Megainvest makes arguments pursuant to Federal Rule of Civil Procedure 45, its arguments are without merit. Megainvest is not the subpoenaed party and has no standing to move to quash the subpoena unless it is seeking to protect a personal privilege or other specific right. *Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009); Fed. R. Civ. P. 45(d)(3). And, Megainvest has not identified any privileged information or other protectable interest that would give it standing to object to the subpoena under Rule 45.

## CONCLUSION

For the reasons set forth above, Megainvest's motions at ECF Nos. 11 and 20 are both DENIED.

SO ORDERED.

DATED:     New York, New York
           July 19, 2022

_____
KATHARINE H. PARKER
United States Magistrate Judge